IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JPT GROUP, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-16-1596 |
| | § | |
| BALENCIAGA and BALENCIAGA | § | |
| AMERICA, INC., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Pending is Defendant Balenciaga America, Inc.'s Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (Document No. 24). After carefully considering the motion, response, reply, supplemental response, and applicable law, the Court concludes for the reasons that follow that the motion should be granted.

### I. Background

Plaintiff JPT Group, LLC ("Plaintiff") owns two design patents for ornamental women's sandals and sells "*MOJO*" sandals embodying the patents under its Bernardo brand.[1] Plaintiff alleges that Defendant Balenciaga America, Inc. ("Defendant"), together with its

---

[1] Document No. 1 ¶¶ 1, 12-16 (Orig. Compl.); id., ex. A (United States Patent No. D581,149); id., ex. B (United States Patent No. D577,182).

parent company, Balenciaga,[2] infringes Plaintiff's patents by selling similar studded thong sandals throughout the United States.[3] Plaintiff seeks damages, attorneys' fees, and a permanent injunction against further infringement.[4] Defendant moves under 28 U.S.C. § 1404(a) to transfer venue to the Southern District of New York, arguing that the only connection between the case and the Southern District of Texas is the location of Plaintiff's counsel and that the Southern District of New York, where Defendant is headquartered and where both parties engage in extensive marketing and sales of their respective products, would be the most convenient and appropriate venue.[5]

## II. Legal Standard

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any

---

[2] Defendant Balenciaga, a French company with its principal place of business in Paris, has not been served or made an appearance in this case, although Plaintiff represents that it "has initiated service of Balenciaga in France through the Hague Convention." Document No. 34 at 3. To the extent that Defendant Balenciaga's interests should be considered as part of the venue transfer analysis, they weigh in favor of transfer, as travel from Paris to New York is more convenient than travel from Paris to Houston.

[3] Document No. 1 ¶¶ 17-27.

[4] Id. at 5-6. Defendant alleges counterclaims for declaratory judgments of non-infringement and invalidity of Plaintiff's patents. Document No. 27.

[5] Document No. 24.

other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The purpose of section 1404(a) is to protect litigants, witnesses, and the public against unnecessary inconvenience and expense, and to avoid the waste of time, energy, and money. Van Dusen v. Barrack, 84 S. Ct. 805, 809 (1964). The transfer of an action under section 1404 is committed to the sound discretion of the district court. Jarvis Christian Coll. v. Exxon Corp., 845 F.2d 523, 528 (5th Cir. 1988).[6]

Under section 1404(a), the movant bears the burden of showing "good cause" to transfer venue. In re Volkswagen of Am., Inc. ("Volkswagen II"), 545 F.3d 304, 315 (5th Cir. 2008) (en banc). "This 'good cause' burden reflects the appropriate deference to which the plaintiff's choice of venue is entitled." Id. "When the movant demonstrates that the transferee venue is clearly more convenient, . . . it has shown good cause and the district court should therefore grant the transfer." Id. However, "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be

---

[6] "Though patent cases are appealed to the Federal Circuit, the Federal Circuit follows Fifth Circuit law on procedural issues such as section 1404's convenience analysis." RSI Video Techs., Inc. v. Vacant Prop. Sec., LLC, No. 3:13-CV-00170, 2013 WL 5530619, at *1 (S.D. Tex. Oct. 4, 2013) (Costa, J.) (citing In re Microsoft Corp., 630 F.3d 1361, 1363 (Fed. Cir. 2011) (applying Fifth Circuit law in reviewing a district court ruling on a motion to transfer on convenience grounds)).

respected." Id. A court should not transfer a case "if the only practical effect is to shift inconvenience from the moving party to the nonmoving party." Goodman Co., L.P. v. A & H Supply, Inc., 396 F. Supp. 2d 766, 776 (S.D. Tex. 2005) (quotation marks and citation omitted). "[W]here, as is the case here, the plaintiff is not from the forum it has chosen, the plaintiff's choice is given less deference." Molina v. Vilsack, No. CIV. A. V-09-40, 2009 WL 5214098, at *2 (S.D. Tex. Dec. 23, 2009).

The threshold issue under section 1404(a) is whether the plaintiff's claim could have been filed in the judicial district to which transfer is sought. In re Volkswagen AG ("Volkswagen I"), 371 F.3d 201, 203 (5th Cir. 2004). If so, the court then considers a number of private interest and public interest factors to determine whether transfer is for the convenience of the parties and in the interest of justice. Volkswagen II, 545 F.3d at 315. The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. Id. The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance

of unnecessary problems of conflict of laws or in the application of foreign law. Id. Although these factors "are appropriate for most transfer cases, they are not necessarily exhaustive or exclusive," and no single factor is dispositive. Id.

### III. Analysis

It is undisputed that Plaintiff could have filed suit in the Southern District of New York, where Defendant is headquartered. The Court therefore looks to the private and public interest factors to determine whether transfer would be convenient and in the interest of justice.

A. Private Interest Factors

1. Relative Ease of Access to Sources of Proof

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." In re Genentech, Inc., 566 F.3d 1338, 1345 (Fed. Cir. 2009) (quoting Neil Bros. v. World Wide Lines, Inc., 425 F. Supp. 2d 325, 330 (E.D.N.Y. 2006)). The record evidence is that: (1) Defendant's headquarters and principal place of business are in New York; (2) all of Defendant's "management, executive, advertising, marketing, wholesale and retail distributions," along with the "personnel and documents relevant to

5

these functions," are located in New York; (3) Defendant's finance employees and documents are in New Jersey, fewer than ten miles from the courthouse for the Southern District of New York; and (4) all of Defendant's "records and documents in the United States that may be relevant to this lawsuit are located in and in close proximity to New York."[7] Defendant also identifies thirteen current and former employees located in New York who have knowledge of the sales, marketing, advertising, distribution, and customer interactions related to Defendant's allegedly infringing sandals.[8] Moreover, while Plaintiff attempts to minimize its ties to New York, there is at least some evidence that Plaintiff's Bernardo brand, which markets the patented sandals at issue, is or recently was headquartered in New York.[9] As this Court recently concluded,

---

[7] Document No. 24-1 at 1-2.

[8] Id. at 3-4. Plaintiff attempts to minimize the significance of Defendant's New York-based operations and evidence by arguing that the key documents and witnesses related to Defendant's design and development of its sandals are likely located in Europe, where Defendant's parent company is based. Document No. 34 at 9-10. To the extent that additional evidence located in Europe is central to Plaintiff's claims against Defendant, it does not weigh against transfer. See RSI Video, 2013 WL 5530619, at *3 ("The possibility that more evidence might be located in the United Kingdom [where the allegedly infringing products are designed and manufactured] than in Chicago [where the defendant is headquartered] or anywhere else does not help RSI because the 'question is *relative* ease of access, not *absolute* ease of access.'") (citing In re Radmax Ltd., 720 F.3d 285, 288 (5th Cir. 2013)).

[9] See, e.g., Document No. 37-2 at 2 of 62 and 14 of 62 (copy of Bernardo website from January 2016 stating that its headquarters are based in New York).

"[r]egardless of the true location of its headquarters, Bernardo clearly has significant connections to New York." JPT Grp., LLC. v. Steven Madden Retail, Inc., No. CV H-15-3264, 2016 WL 3523878, at *2 (S.D. Tex. June 28, 2016) (Miller, J.).

The evidence and witnesses available in the Southern District of Texas are comparatively less significant. Plaintiff, a Delaware corporation with its principal place of business in Oregon,[10] neither argues nor presents evidence that it has employees or documents in Texas. Instead, Plaintiff argues that various former employees of the previous owners of the patents at issue and other witnesses who were involved with the prosecution of the patents reside in Texas.[11] These witnesses' testimonies are unlikely to be central to this infringement case, for which "the bulk of the relevant evidence" is likely to come from Defendant.[12] Genentech,

---

[10] Document No. 1 ¶ 3.

[11] Document No. 34 at 7-8. Notably, the actual inventor of the patents at suit, Dennis Comeau, whose contact information Plaintiff lists as "Counsel for JPT," Document No. 34-1 at 6, is not a Texas resident, and in a prior case Comeau's counsel advised all parties that "Mr. Comeau . . . has transacted all business with [the plaintiff] JPT Group and [the defendant] Steve Madden Companies in New York City and has never done business with either company in Texas." Document No. 37, ex. DD at 62 of 62.

[12] In a previous case filed by Plaintiff alleging infringement of the same patents, the only witness upon whom Plaintiff relied at summary judgment was its manager in Oregon; none of the purportedly critical Texas witnesses provided testimony. See Plaintiff JPT Group's Response to Defendants' Motion for Summary Judgment and Cross Motion for Summary Judgment of Infringement, JPT Group, LLC v. Express, Inc., No. 4:15-cv-2757 (S.D. Tex. Aug. 8, 2016), ECF No. 26.

566 F.3d at 1345; see also <u>Spiegelberg v. Collegiate Licensing Co.</u>, 402 F. Supp. 2d 786, 791-92 (S.D. Tex. 2005) ("Courts have observed that '[i]ntellectual property infringement suits often focus on the activities of the alleged infringer, its employees, and its documents; therefore the location of the alleged infringer's principal place of business is often the critical and controlling consideration' in adjudicating transfer of venue motions.") (quoting <u>Houston Trial Reports, Inc. v. LRP Publ'ns, Inc.</u>, 85 F. Supp. 2d 663, 668 (S.D. Tex. 1999)).

Finally, Plaintiff's contention that Defendant has important documents and witnesses in Texas because its products are sold here is a hollow argument. Defendant produces evidence that "[a]ll sales reporting, inventory information, and documents relevant to advertising and promotion of BALENCIAGA products in the U.S. are centralized in [Defendant's] New York office," such that no information related to this suit is required from third party retailers in Texas, and that Defendant's sales in New York "far exceed" its sales in Texas.[13] Accordingly, the relative ease of access to evidence factor weighs heavily in favor of transfer.

---

[13] Document No. 37-1 at 2.

## 2. Availability of Compulsory Process to Secure the Attendance of Witnesses

A district court may compel a witness to attend a trial, hearing, or deposition that takes place within 100 miles of where the person resides, is employed, or regularly transacts business in person. FED. R. CIV. P. 45(c)(1)(A). Accordingly, this Court has subpoena power over most of Plaintiff's witnesses but none of Defendant's, and the Southern District of New York has subpoena power over Defendant's witnesses but not Plaintiff's. Plaintiff's employees in Oregon, of course, are not subject to compulsory process in either court.

Plaintiff urges that this factor nevertheless weighs against transfer because Defendant's New York witnesses are its employees and compulsory process is unnecessary to compel their attendance, unlike the third-party witnesses in Texas on whom Plaintiff claims it will rely.[14] Plaintiff's argument has been called into question by a recent decision by this Court. Sandbox Logistics LLC v. Grit Energy Sols. LLC, No. 3:16-CV-12, 2016 WL 4400312, at *4 (S.D. Tex. Aug. 17, 2016) ("Some courts in this District have noted that witnesses who are employed by one party to the litigation are often required by their employers to attend and testify at trial, even if they are not within the subpoena power of the Court. [Citations omitted.] The Court notes that the Federal Circuit has not adopted

---

[14] Document No. 34 at 13.

9

this approach--even in cases arising within the Fifth Circuit. Instead, the Federal Circuit evaluates the availability of compulsory process for unwilling witnesses without regard to their status as employees of a party.") (citing <u>In re Toa Technologies</u>, 543 F. App'x 1006, 1009 (Fed. Cir. 2013); <u>In re Acer America Corp.</u>, 626 F.3d 1252, 1255 (Fed. Cir. 2010)).

However, to the extent that there is any merit in Plaintiff's argument that the unavailability in New York of compulsory process for its third-party witnesses is more significant than the unavailability in this Court of compulsory process for Defendant's employee witnesses, the importance of those third-party witnesses to Plaintiff's patent infringement suit against a New York defendant should be considered. The only Texas witnesses listed by Plaintiff were involved with the invention years ago, before Plaintiff acquired the patents by assignment dated February 11, 2014.[15] Of those witnesses listed in Plaintiff's Response, only two are alleged in an unexplained conclusory statement to have "knowledge about . . . infringement by the accused products, and damages," namely, the former President of Bernardo Group and the former CEO of Bernardo Group. Given that Plaintiff has not alleged that infringement of the Patents occurred before February 11, 2014, the testimony of former officers of the former owner of the Patents would appear to have only slight or attenuated historical

---

[15] Document No. 1 at 3.

relevance, if any.  As observed above, most of the critical witnesses in this patent infringement case have been shown to reside in New York.  Thus, on this record, this factor is neutral.

   3.   Cost of Attendance for Willing Witnesses

"In considering the availability and convenience of witnesses, a court must concentrate primarily upon the availability and convenience of key witnesses." Remmers v. United States, No. CIV. A. 1:09-CV-345, 2009 WL 3617597, at *5 (E.D. Tex. Oct. 28, 2009) (collecting cases).  "In determining whether a particular venue is more convenient to witnesses, the court should inquire into the nature and quality of the witnesses' potential testimony with regard to the issues in dispute rather than limit its investigation to a review of which party can produce the longer witness list." Id. (collecting cases); see also Houston Trial Reports, 85 F. Supp. 2d at 668 ("The convenience of one key witness may outweigh the convenience of numerous less important witnesses.") (citation omitted).  The distance and cost of travel between Houston and New York is presumably equal for witnesses residing either in Houston or New York but, as noted above, Defendant's witnesses in New York are likely to be the key witnesses.

Moreover, although the two witnesses identified by Plaintiff in Bend, Oregon and Santa Fe, New Mexico reside closer to Houston than to New York, Defendant presents evidence that there are more

flights available from both locations to New York than to Houston, and that flights from New Mexico to New York are substantially cheaper than flights to Houston despite the greater distance, while flights from Oregon to New York and to Houston are similarly priced.[16]  In sum, considering that most of the key witnesses are in New York, the cost of attendance factor favors transfer.

    4.    <u>All Other Practical Factors</u>

Plaintiff argues that transfer is inefficient because there are multiple related lawsuits filed by Plaintiff in this district involving enforcement of the same patents against different defendants.[17]  However, all of those cases have been settled and closed.  Hence, if there was ever an arguable "efficiency" to retaining this case in Houston as companion to similar cases filed by Plaintiff, that efficiency is no longer present, rendering this a neutral factor.

In sum, the private interest factors weigh strongly in favor of transfer.

B.    <u>Public Interest Factors</u>

Because this case involves federal patent law, the public interest factors involving the court's familiarity with the

---

    [16] Document No. 24, exs. O-R.

    [17] Document No. 34 at 16-17.

governing law and the avoidance of unnecessary conflicts are neutral.[18] Judges in the Southern District of Texas had an average of 799 cases filed from July 2015 to June 2016, compared to 467 cases in the Southern District of New York, but the Southern District of Texas had a slightly shorter median time from filing to disposition of civil cases, so on balance the court congestion factor is neutral.[19]

As for the final public interest factor, the local interest in having localized interests decided at home, "[w]hile the sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue, . . . if there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor." In re Hoffmann-La Roche Inc., 587 F.3d 1333, 1338 (Fed. Cir. 2009) (citations omitted). Both parties sell their products nationwide, but Defendant is headquartered in New York

---

[18] Plaintiff argues as to these factors that this Court is familiar with the patents in suit due to past cases and that a single court should determine whether the asserted patents are valid and enforceable to avoid conflicting decisions. Id. at 19. However, none of Plaintiff's other cases on these patents was assigned to the undersigned Judge. Regardless, all of Plaintiff's other cases have settled, and the two design patents for studded sandals at issue here do not involve complex technology or patent claims regarding which this Court or the undersigned Judge has any superior expertise.

[19] Document No. 24, ex. F at 37 of 250, 62 of 250.

while Plaintiff has no current and ongoing special tie to Houston other than its counsel having his office here. Thus, in comparison to Houston, New York's interest in the litigation is far more significant. See RSI Video Techs., Inc. v. Vacant Prop. Sec., LLC, No. 3:13-CV-00170, 2013 WL 5530619, at *4 (S.D. Tex. Oct. 4, 2013) (Costa, J.) ("[A] district does have a significant local interest in a patent case when one of the parties is located in its borders.").

A district's local interest in a case may also be significant where "the cause of action calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community." Hoffmann-La Roche, 587 F.3d at 1336. Plaintiff argues that the litigation calls into question the work and reputation of the Houston residents who "contributed to the patents in suit and what the Bernardo brand is today," as well as the work and reputation of the local patent prosecution firm that obtained the patents, such that Houston is the proper venue.[20] With due respect for the innovation and work of those who obtained the patents in suit about ten years ago, they sold those patents years ago to Plaintiff. Thus, Plaintiff's accusations in its Complaint do not implicate the work and reputation of those who sold their interests to Plaintiff

---

[20] Document No. 34 at 18.

but do have direct implications for the work and reputation of Defendant's employees in New York, whom Plaintiff accuses of willful patent infringement. On the whole, the local interest factor weighs heavily in favor of transfer.

C.  Conclusion

After careful consideration of the private and public interest factors, the Court finds that all of the private and public factors either weigh in favor of transfer or are neutral. Defendant has established that the Southern District of New York is clearly a more convenient forum for the parties and witnesses and, therefore, in the interest of justice this cause will be transferred to the Southern District of New York.

## IV. Order

For the foregoing reasons, it is

ORDERED that Defendant Balenciaga America, Inc.'s Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (Document No. 24) is GRANTED and this case is TRANSFERRED to the United States District Court for the Southern District of New York.

The Clerk will enter this Order and mail a copy of this Memorandum and Order to the Clerk of the United States District

Court for the Southern District of New York, and shall send copies to all counsel of record.

SIGNED at Houston, Texas, on this 10TH day of February, 2017.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE